**STATE OF TEXAS et al. v. TABASCO CONSOL. INDEPENDENT SCHOOL DIST.**

No. 10165.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1942.

Rehearing Denied Feb. 1, 1943.

See 133 F.2d 196.

Gerald C. Mann, Atty. Gen., of Texas, Geo. W. Barcus and Clarence E. Crowe, Asst. Attys. Gen., of Texas, all of Austin, Tex., for appellant.

Chas. E. Thompson, of McAllen, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

■ This appeal is from an interlocutory decree confirming a plan of composition of the Tabasco Consolidated Independent School District of Texas under the provisions of Section 83, Chapter 9, of the Bankruptcy Act of 1898, as amended.[1] The Reconstruction Finance Corporation, by purchase of 92.52 per centum of the bonded indebtedness of the district and acceptance of the proposed composition, conferred upon the proposal the consent requisite to judicial confirmation.[2] The State of Texas, in behalf of the Texas State Permanent School Fund, the only non-consenting bondholder, opposed the confirmation below and attacks the interlocutory decree here on the grounds that the plan of composition does not represent the maximum ability of the District to pay its indebtedness; that the offer to and acceptance by the R. F. C. was not in good faith; and that the plan discriminates unfairly between creditors of the same class.

The district was organized under legislative authority in 1925 by the consolidation of three districts having a bonded indebtedness of $35,000. Additional bonds totalling $400,000 were issued in that year, and in 1926 the Texas Legislature confirmed the organization of the consolidated district and authorized it to levy a maximum tax, for debt service and maintenance, of $1.50 per $100 of assessed valuation of all taxable property within the district. In 1935 the district refunded its bonds, reducing the interest rate thereon to a general average of 4 per centum and issuing new bonds for the delinquent interest. For the six-year period preceding 1941, the district levied the maximum tax, and allocated the receipts therefrom to debt service in varied amounts ranging from $33\frac{1}{3}$ to $66\frac{2}{3}$ per centum of the total collections, the proportion of the distribution depending upon the requirements for maintenance and operation. Despite the maximum levy, its revenues never were adequate, and in 1941, as the trial court found, the district was insolvent.

The first petition for composition filed by the district involved a plan to borrow $308,750 from the R. F. C., to secure the loan with 4% bonds payable within 30 years, and to use the funds to defray its indebtedness consisting of $459,000 in bonds and $16,000 in warrants at the rate of 65¢ on the dollar. This plan was not confirmed, because the trial court held that the warrants could not be funded into bonds of the district. The plan thereupon was amended by eliminating the warrants; and the composition, as confirmed by the court, provided for the payment of the bonds only, at the rate of 65¢ on the dollar, the arrangement to be financed by selling to the R. F. C. 4% refunding bonds maturing over a 30-year period.

■■ The several points raised in support of the contention that the plan does not represent the maximum ability of the district to pay may be disposed of briefly. The court below should have made findings of fact with reference to the relation between the proposal to pay and the district's ability to pay, but the failure so to find is no ground for reversal here, as the record plainly discloses that this requirement was satisfied by the plan. Under the evidence, the collection of approximately 100% of an entire tax levy based upon the average true value of the taxable property in the district was necessary to enable the district to meet its maturing obligations, and the average annual receipts amounted to only 60% of the levy. This situation resulted from overassessment of the taxable property in the district to the point of diminishing returns, not from mismanagement, and the condition of insolvency was annually growing more acute. That some plan of composition was imperative cannot be doubted, and it does not appear that any other or better adjustment than that pursued was available to the district or was justified by its financial condition. The trial court found that the composition on the basis of 65¢ on the dollar was fair, equitable, and to the best interests of the creditors. Over 90% of the creditors evidenced their agreement by acceptance of that amount.

■ The original offer of the R. F. C. to lend $308,750 was made upon the understanding that the warrants held by it, of the face value of $16,000, should be retired at the same rate and upon the same conditions as the bonds. Upon the elimination of the warrants, its offer for the payment of the bonds only was proportionately reduced. The amount of the refunding bonds

---

[1] 11 U.S.C.A. § 401 et seq.

[2] 11 U.S.C.A. § 403(d).

to be issued did not cover the warrant indebtedness, and it is wholly immaterial that the R. F. C. had a different and more favorable acquisition cost for the bonds held by it than did the State of Texas. Appellant's charge of unfair dealing between the district and the R. F. C. in regard thereto is without justification.

Finally, it is claimed that the plan discriminates unfairly between creditors of the same class, in that the R. F. C. is in reality to receive its settlement in 4% bonds, whereas appellant is required to accept cash. We think this point is well taken, and that appellant is entitled to the same treatment as the R. F. C. In order that the plan may be modified in this respect, the judgment appealed from is reversed, and the cause remanded to the district court for further proceedings not inconsistent with this opinion.